## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | |
|---|---|
| NEW SUPPLIES CO., INC.  and | ) |
| | ) |
| GJ BURKHART INC. DBA FRY FASTENING SYSTEMS | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, DONALD J. TRUMP, IN HIS | ) |
| OFFICIAL CAPACITY AS PRESIDENT OF THE | ) |
| UNITED STATES; WILBUR L. ROSS, JR.,  IN HIS | )   Court No. 20-00048 |
| OFFICIAL CAPACITY AS UNITED STATES | ) |
| SECRETARY OF COMMERCE;  UNITED STATES | ) |
| DEPARTMENT OF COMMERCE; MARK A. | ) |
| MORGAN, IN HIS OFFICIAL CAPACITY AS ACTING | ) |
| COMMISSIONER, UNITED STATES CUSTOMS AND | ) |
| BORDER PROTECTION; UNITED STATES | ) |
| CUSTOMS AND BORDER PROTECTION, | ) |
| | ) |
| Defendants. | ) |

_____)

### COMPLAINT

Plaintiffs New Supplies Co., Inc. ("New Supplies") and GJ Burkhart DBA Fry Fastening

Systems ("Fry Fastening"), by and through their counsel, allege as follows:

### SUMMARY

1.     On January 24, 2020, President Donald J. Trump issued Proclamation 9980

imposing, effective February 8, 2020, an additional 25 percent ad valorem tariff on certain U.S.

imports identified as "derivative steel articles," which were defined as including steel nails, tacks,

drawing pins, corrugated nails, and staples, among other products, and an additional 10 percent ad

valorem tariff on certain U.S. imports identified as "derivative aluminum articles." The President

asserted the authority to do so under section 232 of the Trade Expansion Act of 1962, as amended,

section 304 of title 3, United States Code, and section 604 of the Trade Act of 1974, as amended. See 85 Fed. Reg. 5281 (January 29, 2020) ("Proclamation 9980").

2.     New Supplies is an importer and distributor of various types of steel nails used in the buildings trade, including home and business construction.  Its imports fall under Harmonized Tariff Schedule of the United States ("HTSUS") classifications covered by Annex II to Proclamation 9980.  New Supplies' sales of the imported nails impacted by the 25 percent tariff account for a substantial share of its revenues.  Therefore, New Supplies is adversely affected by the 25 percent tariff.  At no time was New Supplies afforded an opportunity to provide input into the President's decision to impose the tariffs. The Secretary of the U.S. Department of Commerce (the "Secretary" or "Commerce") did not undertake the required investigation or publish any findings or report and no notice was provided that these articles were under consideration for additional tariffs.  The first notice provided was the  issuance of  the President's Proclamation 9980 on January 24, 2020.

3.     Fry Fastening is an importer and distributor of bulk nails, collated gun nails, and staples, serving the construction and industrial trades. Its imports fall under HTSUS classifications covered by Annex II to Proclamation 9980.  Fry Fastening's sales of the imported fasteners impacted by the 25 percent tariff account for a substantial share of its revenues.  Therefore, Fry Fastening is adversely affected by the 25 percent tariff.  At no time was Fry Fastening afforded an opportunity to provide input into the President's decision to impose the tariffs.  Commerce did not undertake the required investigation or publish any findings or report and no notice was provided that these articles were under consideration for additional tariffs.  The first notice provided was the  issuance of  the President's Proclamation 9980 on January 24, 2020.

4.     Under Section 232 of the Trade Expansion Act of 1962 ("Section 232"), "Safeguarding National Security," certain procedural requirements must be followed for tariffs to be imposed pursuant to that authority.  The President must first receive a report from the Secretary of Commerce determining whether the article under investigation is being imported into the United States "in such quantities or under such circumstances as to threaten to impair the national security."  19 U.S.C. § 1862(b)(3)(A) (2018).

5.     The President must then, within 90 days of receipt of Commerce's report, "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the {subject} article *and its derivatives* so that such imports will not threaten to impair the national security."  Id. § 1862(c)(1)(A)(ii) (emphasis added).

6.     If the President concurs with Commerce's report and determines to act, the President is statutorily required to implement such action with respect to the article *and its derivatives* within 15 days of his decision.  See id. § 1862(c)(1)(B) (emphasis added).  These deadlines are clear and unambiguous.  See Transpacific Steel LLC v. United States, No. 19-00009, 2019 Ct. Intl. Trade LEXIS 142, at *9 (Ct. Int'l Trade Nov. 15, 2019) ("The statute's clear and unambiguous steps—of investigation, consultation, report, consideration, and action—require timely action from the Secretary of Commerce and the President.").

7.     Proclamation No. 9980 is unlawful, ultra vires and unconstitutional for the following reasons:

a.     The imposition of duties in Proclamation 9980 is procedurally deficient under the plain language of the statute and implementing regulations because Commerce did not provide reasonable notice to Plaintiffs, nor hold public hearings whereby Plaintiffs could present information and advice relevant to the investigation, which Commerce had done in

the 2017 investigations it conducted related to steel and aluminum articles upon which Proclamation 9980 purports to base its statutory authority. Commerce's regulations set forth the detailed procedures the agency must follow in an investigation under Section 232. See 15 C.F.R. Part 705 (2019). Commerce followed none of them in providing its "assessment" to the President that the HTSUS should be modified to subject derivative steel articles to an additional 25 percent duty. Commerce violated the rulemaking provisions of the Administrative Procedures Act and the President's imposition of additional duties without a properly developed record is arbitrary and capricious.

b.      Second, a report on the effect of imports of steel on national security that the President received from Commerce on January 11, 2018, prepared as part of a Section 232 investigation initiated in 2017 and referenced in Proclamation 9980, cannot provide a basis for additional national security-based tariffs after the 90-day window closed for the President to determine what action must be taken and after a 15-day window to implement such action expired. Nonetheless, on January 24, 2020, the President announced the imposition of tariffs of 25 percent on imports of steel derivative articles (and 10 percent tariffs on imports of aluminum derivative articles), well after the period to adjust imports lapsed. In light of the clear untimeliness of the President's action, the imposition of duties pursuant to Proclamation 9980, effective on February 8, 2020, violates the statutory procedural requirements that Congress established under Section 232 and therefore is ultra vires.

c.      Third, in making "assessments" and "determinations" and by providing "information" to the President identifying specific HTSUS provisions for additional duties,

the Secretary of Commerce violated all of the statutory provisions of Section 232 of the Trade Expansion Act of 1962.

d.      Fourth, the imposition of duties in Proclamation 9980 is both procedurally deficient under the plain terms of the statute and unconstitutional because Commerce did not provide reasonable notice to Plaintiffs or hold public hearings whereby Plaintiffs could have presented information and advice relevant to the investigation.  In the 2017 investigations of steel and aluminum imports, Commerce decided that public input was appropriate and provided notice to interested parties regarding the potential imposition of duties, prescribed a procedure for interested parties to comment on whether steel and aluminum imports impact national security, and held public hearings.  By contrast, there was no notice to affected importers and Commerce failed to provide any administrative process for interested parties to comment on the impact of such duties before the President issued Proclamation 9980.  By failing to provide for their participation prior to imposing tariffs, Plaintiffs were deprived of their Fifth Amendment due process rights.

## JURISDICTION

8.      This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1581(i)(2) and (4) and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702, 704, 706 and 28 U.S.C. § 2631(i).   28 U.S.C. § 1581 provides that "the U.S. Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandize for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(2), and for "administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section." Id. § 1581(i)(4).

Proclamation 9980 does not constitute a determination reviewable under this Court's jurisdiction established at 28 U.S.C. § 1581(a)–(h).  Accordingly, the Court has subject matter jurisdiction of this action under 28 U.S.C. § 1581(i) and may order the relief requested pursuant to 28 U.S.C. § 2643.

9.      The Commerce Department is a federal agency and in his official capacity Secretary Wilbur Ross provided "assessments" to the President leading to the President's imposition of duties on imports of derivative steel products in Proclamation 9980.  This Court has jurisdiction over laws "providing for …tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  This action therefore arises out of a law described in 28 U.S.C. § 1581(i)(2).

10.      U.S. Customs and Border Protection is a federal agency, and in his official capacity Acting Commissioner Mark A. Morgan is enforcing Proclamation 9980 by requiring additional import duties to be paid by importers for covered goods entering the United States since February 8, 2020.  The Court has jurisdiction over U.S. Customs and Border Protection's implementation of duties under because implementation of duties under Section 232 constitutes "administration and enforcement" under 28 U.S.C. § 1581(i)(4).

11.      The Secretary of Commerce failed to follow its regulations in providing the "assessments" to the President, referenced in Proclamation 9980. The "assessments" recommended changes to the HTSUS to impose a 25 percent duty on derivative steel products. Changes to the HTSUS constituted a rulemaking outside the bounds of the regulations implementing Section 232.  The Court reviews such regulatory violations pursuant to the APA. The APA provides for broad judicial review of agency actions brought by "person{s} suffering

legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute."  5 U.S.C. § 702.

12.     Section 232 is a law "providing for tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," as well as for "administration and enforcement with respect to" such tariffs, duties and fees.  Therefore, this matter involves the administration and enforcement of matters referred to in, *inter alia*, 28 U.S.C. § 1581(i)(2), (4).

13.     On January 24, 2020, the President, without any advance notice, announced the imposition of new tariffs on imports of steel- and aluminum- derivative articles, effective February 8, 2020.  However, the statutory deadline for the President to determine what action to take as a result of Commerce's 2017 investigation and resulting report was April 19, 2018, 90 days after the President received Commerce's report.  Because "the President has violated an explicit statutory mandate" prescribed under 19 U.S.C. § 1862, this Court has jurisdiction to hear Plaintiffs' challenge.  See Silfab Solar, Inc. v. United States, 892 F.3d 1340, 1346 (Fed. Cir. 2018) (citing Motion Sys. Corp. v. Bush, 437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc)).

14. This Court has jurisdiction to hear constitutional challenges to laws affecting imports and has recognized such jurisdiction under 28 U.S.C. § 1581(i)(2) and (i)(4) in other challenges to Presidential and agency actions under Section 232.  See, e.g., Am. Inst. for Int'l Steel, Inc. v. United States, __ CIT __, 376 F. Supp. 3d 1335 (2019).

## PARTIES

15.     Plaintiff New Supplies, a family-owned business that was first incorporated in 1977, has its principal place of business at 211 W. Main Street, Griffith, Indiana.  New Supplies

imports and serves as a distributor of a variety of nails and staples, which are steel-derivative products affected by Proclamation 9980, to customers around the country.

16.    Plaintiff Fry Fastening, headquartered at 1740 Carillion Blvd., Cincinnati, Ohio, first started in 1986 as a small, one-man operation to serve the construction and industrial trades. It has since evolved to include three full-service distribution centers, in (1) Cincinnati, (2) Erlanger, Kentucky, and (3) Franklin, Ohio, and  serves the Midwest with a range of products, including nails and staples, providing customers with fastening solutions.  Fry Fastening imports steel-derivative products affected by Proclamation 9980.

17.    Defendant United States of America is the federal government to which Section 232 tariff increases are paid and is the statutory defendant under 28 U.S.C. § 1581(i)(2) and (4).

18.    Defendant Donald J. Trump is the President of the United States.  He issued Proclamation 9980 that is the subject of this Complaint.  He is sued in his official capacity only.

19.    Defendant U.S. Department of Commerce is the agency responsible for initiating and conducting investigations under Section 232 and for providing findings and recommendations to the President of the United States.

20.    Defendant Wilbur L. Ross, Jr. is the Secretary of Commerce.  He is sued in his official capacity only.

21.    Defendant U.S. Customs and Border Protection is the agency that administers and enforces tariffs imposed under Section 232, including the 25 percent tariffs ordered to be imposed on derivative steel products under Proclamation 9980.

22.    Defendant Mark A. Morgan is the Acting Commissioner of U.S. Customs and Border Protection.   He is sued in his official capacity only.

**STANDING**

23.     Plaintiffs bring this action challenging the President's unlawful and ultra vires imposition of tariffs under 19 U.S.C. § 1862, based on violations of the APA, violations of the Section 232 statute, and violations of Plaintiffs' due process rights under the U.S. Constitution.

24.     Plaintiffs each have statutory standing to bring this action under 28 U.S.C. § 2631(i), which provides "{a}ny civil action of which the Court of International Trade has jurisdiction… may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5." 28 U.S.C. § 2631(i).

25.     Plaintiffs each have both constitutional and statutory standing to file this action as U.S. importers and distributors of steel derivative articles named in Annex II to Proclamation 9980. Plaintiffs each have suffered actual and irreparable harm by virtue of the Secretary of Commerce's violations of the APA in bypassing all of the investigative and consultative procedures outlined throughout 15 C.F.R. Part 705.  Plaintiffs each were deprived of the right to provide written comments and in-person testimony regarding the imposition of 25 percent duties on their products, based on public notice provided to similarly situated importers of primary steel products more than two years ago in the steel investigation underlying Proclamation 9980.  In Gilda Industries, Inc. v. United States, the court reviewed a challenge to the composition of a retaliation list issued under Section 301 and found that "the failure to conduct review and revision of the list injured Gilda by depriving it of at least an opportunity to have those products removed."   446 F.3d 1271, 1279 (Fed. Cir. 2006).  Here, Plaintiffs suffered similar injury due to the Secretary's failure to follow the Section 232 regulations and provide an opportunity for New Supplies and Fry Fastening to make their cases that steel nails and other steel fasteners should not be subjected to import duties

under Section 232.  Such injury could be eliminated by the issuance of injunctive relief to bar the collection of such duties and require the refund of such duties collected.

26.     As importers of record, New Supplies and Fry Fastening will have to pay unanticipated duties on derivative steel products, including on products on order at the time Proclamation 9980 was issued, greatly increasing their costs of doing business.  Each Plaintiff also has been forced to revise its business plans as a result of the issuance and implementation of Proclamation 9980. These are actual, concrete and particularized injuries that are directly traceable to the unlawful actions of the Secretary of Commerce and the President.  Such injuries would not exist but for the unlawful government actions.

27.     Plaintiffs each are a United States corporation, employing American citizens, with an interest in the national security of the United States.  Plaintiffs therefore are within the zone of interests to be protected or regulated by Section 232 and its implementing regulations in 15 C.F.R. Part 705.  As importers of record, Plaintiffs will have to pay any import duties levied under Proclamation 9980.   Thus, their injury is traceable to the challenged conduct of the Defendants. Specifically, the President and Secretary of Commerce failed to follow the law in concluding that derivative steel products of the types imported by Plaintiffs pose a threat to national security and imposing 25 percent duties on such products, outside the statutory time limit, thereby causing harm to Plaintiffs.

28.     Plaintiffs have suffered irreparable harm that can be redressed by this Court. Specifically, Plaintiffs were denied an opportunity to comment on the measures imposed by the President and their imports of items named in Annex II resulting in imposition of 25 percent duties on such items.  Additionally, in the event that the Court does not enjoin the imposition of duties under Proclamation 9980, as importers of products subject to such duties, Plaintiffs have standing

to seek recovery of unlawfully collected duties should the Court determine they were unlawfully required.   Recovery of duties that were unlawfully collected does not constitute "monetary damages" foreclosed in cases based on the APA.   See, e.g., Giorgio Foods, Inc. v. United States, __ CIT __, __, 804 F. Supp. 2d 1315, 1324 (2011) (citing Bowen v. Massachusetts, 487 U.S. 879, 893 (1988)).

29.    Plaintiffs, therefore, each qualify as a "person" adversely affected or aggrieved by an agency action within the meaning of 5 U.S.C. § 702, and as an "individual" aggrieved by regulatory and statutory violations.

## TIMELINESS OF THIS ACTION

30.    This action is being filed within two years of January 24, 2020, the date the President issued Proclamation 9980.  This filing is therefore timely because it is filed within two years after the cause of action first accrued.  See 28 U.S.C. § 2636(i).

## FACTS

**Section 232 Generally**

31.    Section 232 authorizes the President "to take action to adjust imports of an article and its derivatives" following a "finding" that "an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security."  19 U.S.C. § 1862(c)(1).  The statute specifies the administrative process and deadlines for a decision ultimately to be made by the President.  Id. § 1862(b) and (c).

32.    A Section 232 investigation by Commerce shall begin only upon the request for such an investigation from "the head of any department or agency, upon application of an interested party" or on the Secretary's "own motion," in which case the Secretary "shall immediately initiate an appropriate investigation to determine the effects on the national security of imports of the article which is the subject of such request, application, or motion." 19 U.S.C. §

11

1862(b)(1)(A).  During such investigation, the Secretary of Commerce must consult with the Secretary of the Department of Defense and other U.S. officials, as appropriate, to determine the effects of the specified imports on the national security.  Id. § 1862(b)(2)(A)(i)-(ii).

33.     The Secretary of Commerce must also "if it is appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice relevant to such investigation." Id. § 1862(b)(2)(A)(iii).

34.     Under the statute, the Secretary then has 270 days from the date the investigation was initiated to submit a report to the President.  The report must contain "the findings of such investigation with respect to the effect of the importation of such article in such quantities or under such circumstances upon the national security and, based on such findings, the recommendations of the Secretary for action or inaction under th{e} section." Id. § 1862(b)(3)(A).

35.     Upon receipt of Commerce's report, the President has 90 days to both "determine whether the President concurs with the finding of the Secretary" and, if the President does concur, "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." Id. § 1862(c)(1)(A)(ii).

36.     After reaching a determination, the President has 15 days to implement the chosen action against the article and its derivatives.  See id. § 1862(c)(1)(B).  The statute does provide the President with more time to act if he elects to "negotiat{e} … an agreement which limits or restricts the importation into, or the exportation to, the United States of the article that threatens to impair national security…" Id. § 1862(c)(3)(A)(i).  In that instance, if either "no such agreement is entered into" within 180 days or the resulting agreement "is not being carried out or is ineffective," the President must "take such other actions as the President deems necessary to adjust the imports

of such article so that such imports will not threaten to impair the national security."   Id. §
1862(c)(3)(A)(ii) (emphasis added).

37.     Within 30 days after "the date on which the President makes any determinations,"
the President "shall submit to the Congress a written statement" explaining "why the President has
decided to take action, or refused to take action."   Id. § 1862(c)(2).

38.     The procedural predicates and deadlines detailed above are unambiguously stated
and must be followed for the President's actions to be lawful.   See Transpacific Steel LLC, 2019
Ct. Intl. Trade LEXIS 142, at *14 (noting "after the time periods set by Congress {under Section
232} for Presidential action had passed, the President lacked power to take new action.").

**The Steel Section 232 Investigation**

39.     On April 19, 2017, the Secretary of Commerce initiated Section 232 investigations
into the effects of aluminum and steel imports on the national security of the United States.
Thereafter, on April 21, 2017, the Secretary published a notice inviting public comment on
"imports of steel."   See *Notice of Request for Public Comments and Public Hearing on Section
232 National Security Investigation of Imports of Steel*, 82 Fed. Reg. 19205 (Dep't Commerce
Apr. 26, 2017).   That notice stated that the Secretary "is particularly interested in comments and
information…related to the importation of steel."   Id. at 19206.   The notice invited public
testimony to "assist the Department in determining whether imports of steel threaten to impair the
national security."   Id.   The notice did not mention nails specifically, or any derivative articles
generally.   Id.   None of the public comments advocated for the tariffs to be applied to, or exempted
from, imported steel nails.   See U.S. DEP'T OF COMMERCE, BUREAU OF INDUS. & SEC.
OFFICE OF TECH. EVALUATION, The Effect of Imports of Steel on the National Security at
app. G, (Jan. 11, 2018) ("Steel Report"), https://www.commerce.gov/sites/default/files/

the_effect_of_imports_of_steel_on_the_national_security_-_with_redactions_-_20180111.pdf).

The word "nails" does not appear anywhere in the transcript of the public hearing held on May 24,

2017.  <u>See</u> U.S. DEP'T OF COMMERCE, BUREAU OF INDUS. & SEC. OFFICE OF TECH.

EVALUATION, Steel 232 Investigation Public Hearing Transcript (May 24, 2017),

https://www.bis.doc.gov/index.php/documents/section-232-investigations/232-steel-

publiccomments/1927-steel-232-investigation-public-hearing-transcript/file.   Based   on   the

transcript, no representatives from domestic producers involved in the numerous nails

antidumping/countervailing duty cases participated in the hearing or filed comments, while

numerous representatives of domestic steel producers attended and testified about their history

filing unfair trade cases on steel products.  <u>See</u> generally U.S. DEPARTMENT OF COMMERCE,

Section 232 Investigation on the Effect of Imports of Steel on U.S. National Security,

https://www.commerce.gov/section-232-investigation-effect-imports-steel-us-national-security.

  40. Had nails and other fasteners been identified as part of the Section 232 investigation

into steel articles, Plaintiffs each would have provided comments.  Plaintiffs closely watch

developments in trade in nails, which have been the subject of a number of

antidumping/countervailing duty proceedings.   But in the case of the Section 232 steel

investigation, which made no reference to nails, neither Plaintiff had reason to believe that its

products were or would be subject to the investigation and thus neither filed comments nor

requested to appear at the 2017 hearing.

  41. On January 11, 2018, Commerce issued the Steel Report.  The Steel Report

expressly stated that the scope of the investigation was limited to certain steel mill products ("steel

articles") described and classified in the HTSUS under subheadings 7206.10 through 7216.50,

7216.99 through 7301.10, 7302.10, 7302.40 through 7302.90, and 7304.10 through 7306.90.  <u>See</u>

Steel Report at 21 ("Product Scope of the Investigation"). None of these products encompassed derivative steel products such as Plaintiffs' steel nails, staples and other fasteners.

42.     Commerce recommended that the President take immediate action to adjust the level of the steel imports through quotas or tariffs. Id. at 58–61. Commerce recommended three alternative actions intended to enable the steel industry to operate at an average capacity utilization rate of 80 percent or better,  including a global 24 percent tariff, a global quota, or tariffs on a subset of countries.  Id.

43.     On March 8, 2018, the President issued Proclamations 9704 and 9705, which concurred with the Secretary's findings and determined to adjust the imports of steel and aluminum by subjecting such articles to 25 percent and 10 percent ad valorem tariffs, respectively.  See Proclamation 9704, Adjusting Imports of Aluminum Into the United States, 83 Fed. Reg. 11619, 11621 (Mar. 15, 2018) and Proclamation 9705, Adjusting Imports of Steel Into the United States, 83 Fed. Reg. 11625, 11626 (Mar. 15, 2018).  The President exempted certain countries from the imposition of measures.  See Proclamation 9740, Adjusting Imports of Steel Into the United States, 83 Fed. Reg. 20683, 20685 (May 7, 2018) (exempting South Korea from steel tariffs announced in Proclamation 9705); see also Proclamation 9894, Adjusting Imports of Steel Into the United States, 84 Fed. Reg. 23987, 23988 (May 23, 2019) (exempting Canada and Mexico from steel tariffs announced in Proclamation 9705).

44.     Neither nails nor any other derivative steel article was listed in the annex of steel articles covered by the 2018 Section 232 action.  See Proclamation 9704, 83 Fed. Reg. at 11629.

**The 2020 Section 232 Proclamation on Derivative Steel and Aluminum Articles**

45.     On January 24, 2020, without any prior notice and nearly two years after issuing Proclamation 9704 and Proclamation 9705, the President issued Proclamation 9980, imposing 10

percent ad valorem tariffs on U.S. imports of certain derivative products manufactured from aluminum and imposing a 25 percent ad valorem tariff on U.S. imports of certain derivative products manufactured from steel, effective February 8, 2020. 85 Fed. Reg. 5281 (Jan. 29, 2020). In support of his legal authority to issue Proclamation 9980, the President cited to the investigations conducted by Commerce in 2017, leading to the January 11, 2018 reports by the Secretary of Commerce.  See id.  But, as noted above, those investigations and reports did not include nails or other fasteners, or any derivative steel or aluminum product.   Instead, in the Proclamation, the President referred to the earlier Aluminum Report and Steel Report, and to his instructions in Proclamations 9704 and 9705:

> 4. In Proclamation 9704 and Proclamation 9705, I directed the Secretary to monitor imports of aluminum articles and steel articles, respectively, and inform me of any circumstances that in the Secretary's opinion might indicate the need for further action under section 232 of the Trade Expansion Act of 1962, as amended.

85 Fed. Reg. 5281.

46.     Proclamation 9980 states that further action under Section 232 is warranted because the Secretary of Commerce "informed" the President that "domestic steel producers' capacity utilization has not stabilized for an extended period of time at or above { } 80 percent," and "{c}apacity utilization in the aluminum industry has improved, but it is still below the target capacity utilization that the Secretary recommended in his report." Id. at 5282.

47.     Proclamation 9980 also states that the Secretary of Commerce has "informed" the President that, "{a}lthough imports of aluminum articles and steel articles {included in Proclamations 9704 and 9705} have declined since the imposition of the tariffs and quotas {pursuant to those Proclamations}, . . . imports of certain derivatives of aluminum articles and imports of certain derivatives of steel articles have significantly increased," and that the "net effect

of the increase of imports of these derivatives has been to erode the customer base for U.S. producers of aluminum and steel." 85 Fed. Reg. 5281.

48.     The Secretary did not conduct a new investigation under the statute.  The statute states that "the Secretary shall immediately provide notice to the Secretary of Defense," 19 U.S.C. § 1862(b)(1)(B), but the Secretary did not do so.  The Secretary also did not consult with the Secretary of Defense as required by the statute.  Id. § 1862(b)(2)(A)(i).  Further, the Secretary did not "submit to the President a report on the findings of such investigation."  Id. § 1862(b)(3)(A).  Nor did the Secretary publish a report in the Federal Register, as required by 19 U.S.C. § 1862(b)(3)(B).

49.     The Secretary did not follow any of its regulations codified in 15 C.F.R. Part 705, setting forth important investigative and consultative procedures and public comment opportunities that were duly followed in the 2017 Section 232 investigation proceeding.  The Secretary's resulting "assessment" to alter the HTSUS to impose 25 percent duties on imports of derivative steel products constitutes unlawful rulemaking.

50.     Neither the President nor the Secretary of Commerce solicited public comment from interested parties regarding whether steel- and aluminum-derivative products impact national security, as was done during the 2017/18 Section 232 investigations on steel and aluminum imports.

51.     Instead, the President claimed that the Secretary of Commerce informed him that "certain derivatives of steel articles have significantly increased since the imposition of the tariffs and quotas" and the "net effect of the increase of imports of these derivatives has been to erode the customer base for U.S. producers of aluminum and steel and undermine the purpose of the proclamations adjusting imports of aluminum and steel articles to remove the threatened

impairment of the national security."  Proclamation 9980, 85 Fed. Reg. at 5282.  Not one of the legal and procedural requirements of Section 232 was met by the Secretary in that he failed to conduct an investigation into new articles not covered by the 2017 investigation.  To date, the Secretary's communication "informing" the President that derivative articles impair the national security has not been made public.

52.    The President promulgated Proclamation 9980 638 days after the window to take action with respect to steel articles and their derivatives had lapsed, constituting a clear violation of the statutory constraints under Section 232.  See Transpacific Steel, 2019 Ct. Intl. Trade LEXIS 142, at *11 ("the statute… cabins the President's power… procedurally, by setting the time in which to act.").  Nothing in the statute provides an exception to the statutory deadlines for derivative products.

53.    On January 29, 2020, the Executive Office of the President published Annexes in the Federal Register listing the products covered by Proclamation 9980 by HTSUS classification. See Proclamation 9980, 85 Fed. Reg. at 5286, 5290.  The covered products included steel nails, tacks (other than thumb tacks), drawing pins, corrugated nails, staples (other than those of heading 8305) and similar derivative steel articles as well as aluminum stranded wire, cables, plaited bands and bumper and body stampings.

54.    Plaintiffs are filing the present action to protect their rights after being denied an opportunity to comment at the agency level and after closely following the lawsuit filed by PrimeSource Building Products, Inc., with whom each of the Plaintiffs competes for business.  See Court No. 20-00032.  PrimeSource has obtained an injunction from the Court under which CBP is enjoined from collecting duty deposits pursuant to Proclamation 9980 for PrimeSource's covered entries, until such time as judgment is entered or the injunction is otherwise modified or dissolved

by the Court.  (See Order, dated February 13, 2020, Court No. 20-00032, Docket No. 40.)  Absent

similar relief, Plaintiffs will be at a considerable competitive disadvantage.

## STATEMENT OF CLAIMS

### COUNT 1 – ILLEGAL ACTS OF THE SECRETARY OF COMMERCE

55.     Plaintiffs incorporate by reference paragraphs 1-54 of this Complaint.

56.     Congress has the exclusive "power to lay and collect taxes, duties, imposts and

excises" and "to regulate Commerce with foreign nations."  U.S. CONST. art. 1, § 8.  Section 232

of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), delineates the particular

circumstances of when and how the President may take action to address imports that threaten to

impair the national security of the United States.  The statute requires an investigation by the

Secretary of Commerce, notification to the Secretary of Defense, and sets forth the factors the

Secretary of Commerce shall consider, culminating in a mandated "report" due to the President

within 270 days after the commencement of an investigation.  See id. § 1862(b).  Following public

notice-and-comment, the Secretary of Commerce promulgated regulations establishing the

procedures the Secretary will follow in conducting such an investigation.  19 C.F.R. Part 705.

57.     The President premised his action in Proclamation 9980 on "assessments" provided

by the Secretary regarding an alleged threat to national security by reason of imports of derivative

steel and aluminum products.  Those "assessments" recommended changes to HTSUS provisions

to impose 25 percent duties, an action constituting a rulemaking under the APA.  See 5 U.S.C. §

551(4)-(5).

58.     In providing such "assessments," undisclosed as of this time, the Secretary violated

Commerce's regulations because he, inter alia:

a. failed to initiate an investigation pursuant to 15 C.F.R. § 705.3(a);

b. failed to notify the Secretary of Defense of the initiation of an investigation pursuant to 15 C.F.R. § 705.3(b);

c. failed to provide proper notification to parties interested in derivative steel products of a public comment period and opportunity to appear at a hearing after the Secretary determined that such information and advice was appropriate with respect to the steel and aluminum articles resulting in the report upon which the President relies in Proclamation 9980 pursuant to 15 C.F.R. § 705.7(a);

d. failed to comply with 15 C.F.R. § 705.8(a)(1) by failing to notify parties interested in derivative steel and aluminum products that the date, time, place and subject matter of hearings held in 2017 on steel and aluminum products was the public notice of hearings on the potential for tariffs to be imposed on derivative products subject to Proclamation 9980, more than two years later; and

e. failed to prepare a report and publish an Executive Summary in the Federal Register pursuant to 15 C.F.R. § 705.10(c).

59. The Secretary's "assessments" regarding the alleged national security threat from derivative steel and aluminum articles, referred to throughout Proclamation 9980 as the legal basis for that Proclamation, bypassed all of the investigative and consultative steps required in the regulations.

60. In bypassing these investigative and consultative steps, the Secretary failed to provide interested parties with sufficient notice and an opportunity to comment on the addition of HTSUS provisions subject to 25 percent duties in violation of the APA.  See 5 U.S.C. § 553.

61. The Secretary's failure to provide an reasoned explanation for his "assessments" or underlying report setting forth a definition of a derivative article and the numerical tests for

measuring the volume increases in imports that triggered this action is arbitrary and capricious under the APA, and, therefore, not in accordance with law.  See 5 U.S.C. §706.

62.    The Secretary further violated Section 232 by making "assessments," "determinations" and providing other "information" to the President without following any of the statutory procedures for new action and by doing so outside the statutory time periods applicable to the 2017-18 investigation conducted by the Secretary that resulted in Proclamation 9705, constituting ultra vires acts.

### COUNT 2 - ILLEGAL AND ULTRA VIRES ACTS OF THE PRESIDENT

63.    Plaintiffs incorporate by reference paragraphs 1-62 of this Complaint.

64.    Congress has the exclusive "power to lay and collect taxes, duties, imposts and excises" and "to regulate Commerce with foreign nations."  U.S. CONST. art 1 § 8.  Section 232 of the Trade Expansion Act of 1962  (19 U.S.C. § 1862) delineates the particular circumstances of when and how the President may take action to address imports that threaten to impair the national security of the United States.

65.    Section 232 places a time limit on the President's authority to take action against imports.  Under the statute, the President must act within 90 days of receipt a report by the Secretary of Commerce, and implement such action on "an article and its derivatives" within 15 days thereafter, in order to remove all threats to national security identified in the report required by the statute.  See 19 U.S.C. § 1862(c)(1)(B).

66.     In issuing Proclamation 9980 almost two years after the 90-day window closed for the President to determine what action must be taken and 638 days after the 15-day window to implement such action, the President failed to abide by the mandated procedures set forth in

Section 232.  The President's action to raise duties on imports of new derivative steel and aluminum products violates the statute and is ultra vires.

## COUNT 3 – DENIAL OF DUE PROCESS

67.    Plaintiffs incorporate by reference paragraphs 1-66 of this Complaint.

68.    The Fifth Amendment to the Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

69.    Plaintiffs have a property interest in their imports of steel derivative products. Section 232 specifies that the Secretary of Commerce "shall… if it is appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice relevant to such investigation." 19 U.S.C. § 1862(b)(2)(A)(iii). The Secretary originally held hearings on the underlying steel articles, and, therefore deemed such notice and comment period appropriate, thus triggering the requirement that the Secretary "shall" hold public hearings.  The Federal Circuit has recognized the existence of a property interest for Fifth Amendment due process purposes for importers facing a deprivation of their property by the federal government.  See, e.g., NEC Corp. v. United States, 151 F.3d 1361, 1370-71 (Fed. Cir. 1998).  Further, the Supreme Court has dictated that "{d}ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 323 (internal quotation and citation omitted).

70.    This particular situation demands such procedural protections. Plaintiffs were not provided with notice that their imports could be subject to duties under to Section 232, with Proclamation 9980 citing an investigation held more than two years earlier as the legal basis for the extension of duties to new products.

71.     By failing to provide parties with notice and an opportunity to comment before issuing Proclamation 9980 imposing Section 232 tariffs on steel derivative products, the President violated Plaintiffs' due process rights protected under the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, New Supplies and Fry Fastening respectfully pray that this Court:

(1) Enjoin Defendants from implementing or further enforcing Proclamation 9980;

(2) Enter judgment in favor of Plaintiffs and declare Proclamation 9980 unlawful;

(3) Refund to New Supplies and Fry Fastening any duties that may be collected on its imported articles pursuant to Proclamation 9980;

(4) Award Plaintiffs costs and any reasonable attorneys' fees and expenses; and

(5) Grant such additional relief as the Court may deem just and proper.


Respectfully Submitted,

Dated:  February 25, 2020

*/s/ Brenda A. Jacobs*
Brenda A. Jacobs
Jacobs Global Trade & Compliance LLC
4134 N, River Street
McLean, VA 22101
202-256-2911
bjacobs@jacobsglobaltrade.com
*Counsel to New Supplies Co., Inc. and*
*GJ Burkhart DBA Fry Fastening Systems*